UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

PERNELL GORDON and LATOYA GORDON, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

-v.-

RIVERDALE SNF, LLC, *doing business as* SCHERVIER REHABILITATION AND NURSING CARE CENTER; 2975 INDEPENDENCE AVENUE, LLC; TL MANAGEMENT, LLC; TL MANAGEMENT CO., LLC; TL HEALTHCARE LEASING, LLC; TL HEALTHCARE HOLDINGS, LLC,

Defendants.

</td><td>

24 Civ. 2612 (KPF)

**OPINION AND ORDER**

</td></tr>
</table>

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Pernell Gordon and Latoya Gordon bring this action against their alleged employers, Riverdale SNF, LLC, doing business as Schervier Rehabilitation and Nursing Care Center ("Riverdale"); 2975 Independence Avenue, LLC; TL Management, LLC; TL Management Co., LLC; TL Healthcare Leasing, LLC; and TL Healthcare Holdings, LLC (collectively with Riverdale, "Defendants"). Pernell Gordon asserts unpaid overtime claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, on behalf of himself and all similarly situated current and former hourly employees who were employed by Defendants for a period of three years prior to the filing of the original complaint and the date of final judgment in this matter, and who elect to opt in to this action (the "Putative Collective"). Both Pernell Gordon and Latoya Gordon assert claims under the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190-199-a, 650-665, on behalf of themselves and all similarly

situated current and former hourly employees who work or have worked for
Defendants in New York for a period of six years prior to the filing of the
original complaint and the date of final judgment in this matter (the "Putative
New York Class").

Before the Court is Defendants' motion to dismiss Plaintiffs' First
Amended Complaint (the "FAC") pursuant to Federal Rules of Civil Procedure
12(b)(1) and 12(b)(6).  For the reasons set forth in the remainder of this
Opinion, the Court grants in part and denies in part the motion.

BACKGROUND[1]

A.    Factual Background

1.    The Parties

Plaintiff Pernell Gordon, a resident of New York, alleges that he was
employed by Defendants, first as a Dietary Worker and Cook from in or around
2005 through January 2022, and then as a full-time Cook from January 2022
to June 2022.  (FAC ¶¶ 5-6).  Plaintiff Latoya Gordon, a resident of New York,

---

[1]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #37)), the
well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See
Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on
the asset purchase agreement that is attached to the FAC (the "Asset Purchase
Agreement" (FAC, Ex. C (Dkt. #37))), which is incorporated by reference in the FAC.  *See
Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (explaining that on a motion to
dismiss, courts may consider documents incorporated by reference and documents
integral to a complaint).

For ease of reference, the Court refers to Defendants' memorandum of law in support of
their motion to dismiss as "Def. Br." (Dkt. #41); to Plaintiffs' memorandum of law in
opposition to the motion to dismiss as "Pl. Opp." (Dkt. #43); and to Defendants' reply
memorandum of law in further support of the motion to dismiss as "Def. Reply" (Dkt.
#44).  Further, the Court refers to Defendants' supplemental submission regarding the
May 9, 2025 amendment of NYLL § 198(1-a) as "Def. Supp. Br." (Dkt. #50), and to
Plaintiffs' supplemental submission regarding the same as "Pl. Supp. Br." (Dkt. #51).

alleges that she was employed by Defendants as a Recreation Aide from in or around August 2021 through October 2021.  (*Id.* ¶¶ 9-10).

Defendant Riverdale, a domestic limited liability company, is alleged to own and operate the licensed residential healthcare facility located at 2975 Independence Avenue, Bronx, New York 10463, doing business as Schervier Rehabilitation and Nursing Care Center.  (FAC ¶¶ 13-14).  Riverdale acquired that facility through an asset purchase agreement (the "Asset Purchase Agreement") dated March 31, 2016.  (*Id.*, Ex. C at 1).  Plaintiffs further allege that Riverdale has business addresses at 2975 Independence Avenue, Bronx, New York 10463, and 2071 Flatbush Avenue, Suite 22, Brooklyn, New York 11234, and a mailing address at 400 Rella Boulevard, Suite 140, Suffern, New York 10901.  (*Id.* ¶ 16).  Riverdale is listed on Latoya Gordon's paystubs throughout her employment and on Pernell Gordon's paystubs in 2021.  (*Id.* ¶ 15).

Defendant 2975 Independence Avenue, LLC is an entity that is alleged to be associated with Riverdale and to have purchased the real property at 2975 Independence Avenue, Bronx, New York 10463, pursuant to the Asset Purchase Agreement.  (FAC ¶ 22).  The recitals of the Asset Purchase Agreement state that "2975 Independence Avenue LLC … will close on the purchase of Owned Real Property … pursuant to a separate agreement of even date herewith."  (*Id.*, Ex. C at 1).

Defendant TL Management, LLC, a Florida limited liability company, is alleged to be an entity associated with both Riverdale and 2975 Independence

Avenue, LLC.  (FAC ¶ 23).  TL Healthcare Leasing, LLC and TL Healthcare
Holdings, LLC are also alleged to be Florida limited liability companies
associated with Riverdale and 2975 Independence Avenue, LLC.  (*Id.* ¶¶ 31-32).
Finally, TL Management Co., LLC is alleged to be an entity associated with
Riverdale and 2975 Independence Avenue, LLC.  (*Id.* ¶ 30).

### 2.    Plaintiffs' Work Schedules

Plaintiff Pernell Gordon alleges that from 2005 until January 2022, he
"generally worked in his position as a Dietary Worker from 11[:00] a.m. to
7[:00] p.m.[,] three days per week."  (FAC ¶ 73).  "He alternated between 5- and
6-day workweeks, with the remaining two or three days per week spent as a
Cook."  (*Id.*).  On the days that he worked as a Cook, he worked from 6:00 a.m.
to 2:00 p.m.  (*Id.*).  Pernell Gordon further alleges that Defendants "deducted
30 minutes for his meal break each day."  (*Id.*).  Therefore, for every 8-hour
workday, his paystubs reflected 7.5 hours of work.  (*Id.*).  Beginning in January
2022, when Pernell Gordon began working solely as a Cook, he "was generally
scheduled to work from 6[:00] a.m. to 2[:00] p.m., alternating between 5[-] and
6-day workweeks."  (*Id.* ¶ 74).  Again, he alleges that Defendants deducted 30
minutes for a meal break each day, such that his paystubs reflected 7.5 hours
of work for each 8-hour workday.  (*Id.*).

According to Pernell Gordon, throughout his employment, Defendants
did not pay him "the proper wages for all the time that he was suffered or
permitted to work" and "did not compensate [him] for his off-the-clock Meal
Break Time."  (FAC ¶ 74).  He "estimates that he worked an average of

approximately 65 minutes of weekly off-the-clock Meal Break Time." (*Id.* ¶ 76). He alleges that "[i]n every week that he worked six days per week, his total hours, including off-the-clock Meal Break Time, exceeded 40," but "he was not compensated at a rate of time and one-half his regular rate of pay for his off-the-clock Meal Break Time." (*Id.* ¶ 77). Pernell Gordon further alleges that Defendants "consistently provided [him] with inaccurate wage statements that did not show Meal Break Time." (*Id.* ¶ 75). And despite the fact that he regularly spent more than twenty-five percent of his shifts on physical tasks, including but not limited to preparing and cooking meals, he was paid on a bi-weekly basis "consistently" throughout his employment. (*Id.* ¶ 78).

Plaintiff Latoya Gordon also alleges that Defendants failed to pay her "the proper wages for all the time that she was suffered or permitted to work" and "did not compensate [her] for her off-the-clock Meal Break Time." (FAC ¶ 80). She "estimates that she worked an average of approximately 45 minutes of weekly Meal Break Time." (*Id.* ¶ 82). She further alleges that Defendants "consistently provided [her] with inaccurate wage statements that did not show Meal Break Time." (*Id.* ¶ 81). Finally, she also alleges that she regularly spent more than twenty-five percent of her shifts on physical tasks, including transporting residents in wheelchairs, leading activities, transporting materials for activities, and hanging announcements, but that she was paid on a bi-weekly basis "consistently" throughout her employment. (*Id.* ¶ 83).

### B.    Procedural Background

Plaintiffs commenced this action by filing their initial complaint on April 5, 2024, alleging wage and hour claims under the FLSA and the NYLL. (Dkt. #1).  On May 9, 2024, Defendants requested a pre-motion conference regarding their anticipated motion to dismiss the initial complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. #22).  Plaintiffs opposed the pre-motion letter, and requested that the Court deny Defendants' anticipated motion and permit Plaintiffs to amend the complaint to narrow the issues in dispute.  (Dkt. #26).  On August 14, 2024, the Court held a conference to discuss the issues raised by the parties.  (*See* August 14, 2024 Minute Entry).  The Court set a briefing schedule, which included time for Plaintiffs to file an amended complaint.  (*Id.*).

On September 6, 2024, Plaintiffs filed the FAC, the operative pleading in this action.  (Dkt. #37).  On October 4, 2024, Defendants filed their motion to dismiss.  (Dkt. #40).  Plaintiffs filed their opposition to the motion on November 8, 2024.  (Dkt. #43).  On November 22, 2024, Defendants filed their reply in further support of the motion to dismiss.  (Dkt. #44).  On May 14, 2025, Defendants and Plaintiffs each requested leave to file a five-page letter brief to address the implications of a recently enacted law amending NYLL § 198 on Plaintiffs' Sixth Cause of Action and Defendants' motion to dismiss (Dkt. #48), which request the Court granted (Dkt. #49).  On June 2, 2025, Defendants and Plaintiffs submitted five-page letter briefs addressing that issue.  (Dkt. #50, 51).

6

## DISCUSSION

### A.    Legal Standards

As noted, Defendants present arguments for dismissal under both Rule 12(b)(1) (for lack of subject matter jurisdiction) and Rule 12(b)(6) (for failure to state a claim). Generally speaking, this Court addresses challenges to its jurisdiction before considering the merits of a particular claim. *See, e.g.*, *Callender* v. *N.Y. State Dep't of Motor Vehicles*, No. 23 Civ. 9314 (KPF), 2025 WL 1785839, at *3 (S.D.N.Y. June 27, 2025). However, because Defendants' Rule 12(b)(1) arguments are limited to only one of Plaintiffs' state-law claims, the Court will begin with Defendants' Rule 12(b)(6) challenges to Plaintiffs' FLSA claim, which is the proffered basis for the Court's subject matter jurisdiction.

### 1.    Standard for Dismissal Under Rule 12(b)(6) for Failure to State a Claim

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge,*

*Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  This narrow universe includes "facts stated on the face of the complaint" and "documents appended to the complaint or incorporated in the complaint by reference." *Id.* (internal quotation marks omitted); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

### 2. Standard for Dismissal Under Rule 12(b)(1) for Lack of Standing

"Rule 12(b)(1) allows parties to challenge a federal court's subject matter jurisdiction." *Marcial* v. *New Hudson Fam. Rest. Inc.*, No. 18 Civ. 663 (NSR) (JCM), 2019 WL 1900336, at *2 (S.D.N.Y. Apr. 29, 2019) (citing Fed. R. Civ. P. 12(b)(1)).  "In considering a facial motion to dismiss for lack of Article III standing under Rule 12(b)(1), the Court must 'determine whether the complaint alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Su* v. *Advanced Care Staffing, LLC*, 733 F. Supp. 3d 119, 126 (E.D.N.Y. 2024) (alterations adopted) (quoting *Bloomberg Fin. L.P.* v. *UBS AG*, 358 F. Supp. 3d 261, 277 (S.D.N.Y. 2018) (quoting *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016))).  To establish Article III standing at the pleading stage of the case, the plaintiff asserting federal jurisdiction must plausibly plead: "[i] an injury in fact; [ii] a causal connection between the injury and conduct complained of; and [iii] that it is likely that the injury will be redressed by a favorable decision." *Id.*; *see generally Marks-Ellis* v. *NYU Langone Health Sys.*, No. 23 Civ. 9618 (KPF), 2025 WL 1784814, at *3 (S.D.N.Y. June 27, 2025).

B.    **Analysis**

1.    **Plaintiffs Have Failed to Plausibly Allege a Single Integrated Enterprise**

Defendants first argue that Plaintiffs have failed to plausibly allege that

they were employed by Defendants 2975 Independence Avenue, LLC; TL

Management, LLC; TL Management Co., LLC; TL Healthcare Leasing, LLC; and

TL Healthcare Holdings, LLC, and, therefore, only Riverdale could potentially be

found liable to Plaintiffs under the FLSA or the NYLL.  (Def. Br. 3-6; Def.

Reply 9-10).  In response, Plaintiffs argue that they have sufficiently alleged

that all Defendants operated as a single integrated enterprise.  (Pl. Opp. 21-

25).[2]

"To be liable under the FLSA and NYLL, a person must be an 'employer.'"

*Bravo* v. *Established Burger One, LLC*, No. 12 Civ. 9044 (CM), 2013 WL

5549495, at *5 (S.D.N.Y. Oct. 8, 2013).  Under the FLSA statute, "Employer" is

defined to include "any person," including any corporation or association — not

including labor organizations — "acting directly or indirectly in the interest of

an employer in relation to an employee."  29 U.S.C. § 203(d).  "Employ," in

turn, is defined to "include[ ] to suffer or permit to work."  *Id.* § 203(g).  "The

Supreme Court has observed … that the 'striking breadth' of the FLSA's

definition of 'employ' 'stretches the meaning of 'employee' to cover some parties

who might not qualify as such under a strict application of traditional agency

---

[2]    In their opposition briefing, Plaintiffs seek leave to amend the FAC to remove allegations against TL Management Co., LLC.  (Pl. Opp. 21 n.14).  The Court's resolution of Defendants' motion moots this application.

law principles,' in order to effectuate the remedial purposes of the act."
*Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008)
(quoting *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U.S. 318, 326 (1992)).
"Accordingly, this Circuit treat[s] employment for FLSA purposes as a flexible
concept to be determined on a case-by-case basis by review of the totality of the
circumstances." *Perez Perez* v. *Escobar Constr., Inc.*, No. 23-1240, 2024 WL
3594325, at *2 (2d Cir. July 31, 2024) (summary order) (citing *Barfield*, 537
F.3d at 141-42 (internal quotation marks omitted)).

"It is well established that, for purposes of the FLSA, a worker may be
employed by more than one entity at the same time." *Perez Perez*, 2024 WL
3594325, at *4 (internal quotation marks omitted). Further, "an employee, who
is technically employed on the books of one entity, which is deemed to be part
of a larger 'single-employer' entity, may impose liability for certain violations of
employment law not only on the nominal employer but also on another entity
comprising part of the single integrated employer." *Id.* (quoting *Arculeo* v. *On-
Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). Courts in the
Second Circuit have applied either the "single integrated enterprise" test or the
"economic reality" theory of employment to determine whether an employer-
employee relationship exists. *See Jackson* v. *Total Relocation Servs., LLC*,
No. 23 Civ. 4118 (KPF), 2024 WL 4850814, at *6 & n.3 (S.D.N.Y. Nov. 21,
2024).

Here, Plaintiffs argue that they have alleged an employment relationship
under the single integrated enterprise theory. (Pl. Opp. 21-24). In determining

whether the single integrated enterprise theory applies, courts consider the following factors: "[i] interrelation of operations, [ii] centralized control of labor relations, [iii] common management, and [iv] common ownership or financial control." *Jackson*, 2024 WL 4850814, at *6 (internal quotation marks omitted) (collecting cases); *see also Murray* v. *Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (listing the four factors). "Although no one factor is determinative ... control of labor relations is the central concern." *Mangahas* v. *Eight Oranges Inc.*, 754 F. Supp. 3d 468, 486 (S.D.N.Y. 2024) (quoting *Murray*, 74 F.3d at 404).

Because control of labor relations is the most important consideration, the Court examines this factor first. "[C]entralized control of labor relations[ ] looks to whether there has been centralization of 'tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions.'" *Mangahas*, 754 F. Supp. 3d at 486-87 (quoting *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000)). It "may also be shown where the same individuals own and manage the entities, implement employment policies across locations, and operate out of shared offices." *Id.* at 487.

In their opposition, Plaintiffs identify only one factual allegation in support of the control of labor relations factor: a newspaper article published after Riverdale acquired the residential healthcare facility located at 2975 Independence Avenue stating that "TL Management" had agreed to hire the existing workforce at the facility. (*See* Pl. Opp. 23 (citing FAC ¶ 27)). But that allegation provides no clarity as to whether TL Management, LLC; TL

11

Management Co., LLC; TL Healthcare Leasing, LLC; or TL Healthcare Holdings, LLC would be controlling labor relations. It also does not bear on the other entity at issue, 2975 Independence Avenue, LLC.

Moreover, the Court notes that the same article that Plaintiffs proffer in support of their allegation that "TL Management" had the power to hire employees also states that "TL Management [would] not run the facility, and [would] instead lease the Schervier nursing home and apartments to a third-party operator." Isabel Angell, *For-Profit Group Buys Schervier Care Center*, Riverdale Press (Apr. 14, 2016), https://www.riverdalepress.com/stories/for-profit-group-buys-schervier-care-center,59706 (last visited Aug. 14, 2025).[3] In other words, while the article indicates that "TL Management" may have had some authority to decide whether to hire employees who worked for the previous owners as part of its initial acquisition, it also suggests that, even at the time of the acquisition, it was contemplated that a third-party would be operating the facility going forward. *Id.* Therefore, this single factual allegation is not sufficient to plead control of labor operations.

---

[3]     This article, for which Plaintiffs included the link in the FAC, is incorporated by reference therein and therefore the Court considers it in deciding this motion to dismiss. *See Cent. States, Se. & Sw. Areas Pension Fund* v. *Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (summary order) ("Because [the plaintiff] incorporated this article into the complaint by reference, we may properly consider even those portions of the article not quoted in the complaint." (citing *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007))); *Richards* v. *Warner Music Grp.*, No. 22 Civ. 6200 (DEH), 2024 WL 4307994, at *1 (S.D.N.Y. Sept. 26, 2024) ("Plaintiff attaches to his Second Amended Complaint links to YouTube videos of performances of the copyrighted works, which are incorporated into the Second Amended Complaint by reference.").

The FAC also recites that Defendants "maintained control, oversight, and direction over Plaintiffs ... including but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices." (FAC ¶ 34). While the Court recognizes that "the power to hire employees is a key consideration in analyzing whether an alleged employer exercised 'control' over an employee for FLSA purposes," *Ramirez* v. *Liberty One Grp. LLC*, No. 22 Civ. 5892 (KPF), 2023 WL 4541129, at *5 (S.D.N.Y. July 14, 2023) (citing *Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)), it finds that Plaintiffs have not sufficiently alleged that any of the entities other than Riverdale, or any person at those entities, had that power, or any other power specified in their conclusory statement.

In other cases in this Circuit where plaintiffs have sufficiently alleged common control of labor relations, the complaints included more concrete factual allegations. For example, in *Gonzalez* v. *Wicked Taco LLC*, the plaintiff alleged that the two restaurants at issue stored and maintained records through the same payroll processor and that employees across those restaurants were directed to address questions concerning payroll or finances to the same person, who had a single work email. 764 F. Supp. 3d 77, 98 (E.D.N.Y. 2025), *reconsideration denied*, 772 F. Supp. 3d 284 (E.D.N.Y. 2025); *see also Sanchez* v. *Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 374 (S.D.N.Y. 2022) (allowing claims to proceed on single integrated enterprise theory where plaintiffs alleged multiple common owners, managers who operated at different locations, and "shar[ing of] a central office, finance and payroll department,

13

phone number, email address, and at least four employees"), *aff'd*, No. 22-2917-cv, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (summary order); *Juarez* v. *449 Rest., Inc.*, 29 F. Supp. 3d 363, 367-68 (S.D.N.Y. 2014) (finding that plaintiff had sufficiently pleaded that defendants operated as a single integrated enterprise in alleging that one man owned, managed, and oversaw all operations at each restaurant at issue, and plaintiff worked at three of the locations).

Plaintiffs also point to another case before this Court, *Karupaiyan* v. *CVS Health Corp.*, in an attempt to support their claim. (*See* Pl. Opp. 21 (citing No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *10-11 (S.D.N.Y. Sept. 23, 2021))). But there, too, the plaintiff alleged more; he pleaded facts about his employment, including that he had been interviewed by employees of three of the corporate affiliates that he alleged were part of the single integrated enterprise; that one entity's security policy gave him access to another entity's applications; and that his email signature included the logo of one entity and the name of two others. *See Karupaiyan*, 2021 WL 4341132, at *10; *cf. Diaz* v. *Consortium for Worker Educ., Inc.*, No. 10 Civ. 1848 (LAP), 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010) (granting motion to dismiss where plaintiff alleged "no facts that indicate that [the defendant] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their working hours, or maintaining employment records"). In the instant matter, Plaintiffs do not allege any facts, other than one conclusory statement, regarding

14

Defendants' control over them as employees, or any other employees, other than with respect to Riverdale.

Plaintiffs have also not sufficiently alleged operational interrelatedness. In evaluating this factor, courts look to whether the entities at issue "share employees, services, records, and equipment," or "commingle bank accounts, inventories, and lines of credit." *Dobrosmylov* v. *DeSales Media Grp., Inc.*, 532 F. Supp. 3d 54, 62 (E.D.N.Y. 2021) (quoting *Geraci* v. *Rest. at Apple Greens, Inc.*, No. 16 Civ. 1385 (BKS), 2019 WL 1386318, at *14 (N.D.N.Y. Mar. 27, 2019) (internal quotation marks omitted)).  Plaintiffs argue that several alleged facts establish operational interdependence: (i) Defendant Riverdale owns and operates the health care facility located at 2975 Independence Avenue, Bronx, New York 10463, which it jointly purchased with Defendant 2975 Independence Avenue, LLC, and both of those entities had the same business address, 2071 Flatbush Avenue, Suite 22, Brooklyn, New York, 11234, and operating officer, Zevi Kohn, at the time of that purchase; (ii) the Asset Purchase Agreement reflects that notices were to be sent to "2975 Independence Avenue, LLC c/o TL Management[,] LLC"; and (iii) Defendants TL Management, LLC, TL Management Co., LLC, TL Healthcare Leasing, LLC and TL Healthcare Holdings, LLC also shared the business address, 2071 Flatbush Avenue, Suite 22, Brooklyn, New York, 11234.  (*See* Pl. Opp. 22-23 (citing FAC ¶¶ 13, 22, 25, 30-32, Ex. C at 42-43); *see also* FAC ¶¶ 23-24).

To be sure, the allegations put forth in support of this factor are stronger than the allegations identified in support of the control of labor operations

factor. But they essentially boil down to a shared business address and a shared operating officer, and neither named Plaintiff alleges working at that shared business address or having interactions with that operating officer. The FAC is also silent (other than the allegation regarding the labor force predicated on a newspaper article discussed above) as to whether any of those entities have any shared employees, other than one operating officer, or shared records, equipment, bank accounts, inventories, or lines of credit. *Cf. Wicked Taco LLC*, 764 F. Supp. 3d at 98 (finding that plaintiff had adequately alleged that two restaurants had interrelated operations where they shared employment records, including those regarding payroll and timekeeping).

Finally, the Court's consideration of the remaining factors, common management and common ownership or financial control, do not change its finding that Plaintiffs have failed to sufficiently plead a single integrated enterprise. Plaintiffs' allegations that several Defendants shared an executive and a listed business address is not enough. *See Huer Huang* v. *Shanghai City Corp.*, 459 F. Supp. 3d 580, 587-88 (S.D.N.Y. 2020) (finding insufficient plaintiffs' allegations that an individual defendant owned a 50% share of multiple restaurant locations and that those restaurants used the same website). Because Plaintiffs have not pleaded a plausible claim against Defendants 2975 Independence Avenue, LLC; TL Management, LLC; TL Management Co., LLC; TL Healthcare Leasing, LLC; and TL Healthcare Holdings, LLC, despite two opportunities to do so, the claims against those Defendants are dismissed with prejudice. *See id.* at 592.

16

## 2. Plaintiff Pernell Gordon Has Adequately Alleged a Claim for Unpaid Overtime Under the FLSA[4]

In the FAC's First Cause of Action, Plaintiff Pernell Gordon, on behalf of himself and the Putative Collective, asserts a claim for unpaid overtime wages under the FLSA.  (FAC ¶¶ 95-100).  In response, Defendants argue that the FAC fails to plausibly allege an overtime violation, and therefore the Court should dismiss the claim.  (Def. Br. 6-7).  Specifically, they argue that Pernell Gordon has missed the mark because he "never alleges that he actually *worked* 'off-the-clock Meal Break Time' on his 6-day workweeks, just that his total hours, 'including the off-the-clock Meal Break Time,' exceeded 40."  (*Id.* at 7).  Further, they claim that his allegations constitute "borderline phrases" that "fail to cross the line between the conclusory and the factual."  (*Id.* (quoting *Dejesus* v. *HF Mgmt. Servs., LLC*, 726 F.3d 85, 88-90 (2d Cir. 2013))).  The Court disagrees with Defendants' reading of the FAC.

Under the FLSA, an employer who "employ[s] any of his employees … for a workweek longer than forty hours" must compensate that employee for the additional hours "at a rate not less than one and one-half times the regular rate at which he is employed" (*i.e.*, time and a half).  29 U.S.C. § 207(a)(1).  "Employees who are entitled to, but improperly denied, overtime … may sue to recover unpaid overtime compensation … and … an additional equal amount as liquidated damages."  *Herrera* v. *Comme des Garcons, Ltd.*, 84 F.4th 110, 113-14 (2d Cir. 2023) (internal quotation marks omitted).  In 2013, the Second

---

[4]    Plaintiff Latoya Gordon does not allege a claim under the FLSA.

Circuit issued three decisions addressing the standard for pleading a plausible FLSA overtime claim. *See id.* at 114 (citing *Lundy* v. *Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114-15 (2d Cir. 2013); *Nakahata* v. *N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200, 201 n.10 (2d Cir. 2013); and *Dejesus*, 726 F.3d at 88-90). In 2023, the Second Circuit summarized and reiterated the holdings of those cases: "[t]he straightforward lesson we draw from these three decisions is that plaintiffs must plead FLSA overtime claims with 'specificity.'" *Id.* at 115 (quoting *Nakahata*, 723 F.3d at 200). To plead such claims with the requisite specificity, "plaintiffs must sufficiently allege '40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *Id.* (quoting *Lundy*, 711 F.3d at 114). "Nothing more is required." *Id.* Indeed, a plaintiff is not required to "make an approximation of overtime hours" worked, but such "an approximation 'may help draw a plaintiff's claim closer to plausibility.'" *Id.* (quoting *Dejesus*, 726 F.3d at 88).

Here, the Court finds that the FAC is sufficiently specific to state an overtime claim under the FLSA. As discussed, Plaintiff Pernell Gordon alleges that he worked for Defendants from 2005 until June 2022. (FAC ¶ 72). From 2005 until January 2022, he worked as both a Dietary Worker and a Cook. (*Id.*). Throughout that period, he "alternated between 5- and 6-day workweeks." (*Id.* ¶ 73). He "generally" worked as a Dietary Worker "three days per week," for an eight-hour shift from 11:00 a.m. until 7:00 p.m. (*Id.*). For the "remaining two or three days per week," he worked as a Cook from 6:00 a.m. to 2:00 p.m. (*Id.*). From January 2022 until June 2022, he worked

"solely as a Cook, and was generally scheduled to work from" 6:00 a.m. until 2:00 p.m., "alternating between 5[-] and 6-day workweeks." (*Id.* ¶ 74). Throughout his employment, his paystubs reflected 7.5 hours of work for each eight-hour workday. (*Id.* ¶¶ 73-74). Plaintiff Pernell Gordon estimates that he "worked an average of approximately 65 minutes of weekly off-the-clock Meal Break Time." (*Id.* ¶ 76). Therefore, "[i]n every week that he worked six days per week, his total hours, including off-the-clock Meal Break Time, exceeded 40," but "he was not compensated at a rate of time and one-half his regular rate of pay for his off-the-clock Meal Break Time." (*Id.* ¶ 77).

While the FAC could have included more factual matter, such as specific weeks in which Pernell Gordon worked six-day workweeks, he has alleged enough for his FLSA claim to survive the motion to dismiss. Pernell Gordon alleges a period of employment of approximately 17 years, during which his schedule "alternated" between five- and six-day work weeks. (FAC ¶¶ 72-74). He then alleges both that he "*worked* an average of approximately 65 minutes of *weekly off-the-clock* Meal Break Time," and that "[i]n every week that he worked six days per week, his total hours, including off-the-clock Meal Break Time, exceeded 40," but that "he was not compensated at a rate of time and one-half his regular rate of pay for his off-the-clock Meal Break Time." (*Id.* ¶¶ 76-77 (emphases added)).

Drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this stage of the case, the Court understands the FAC to allege that (i) Pernell Gordon worked approximately 65 minutes of Meal Break time every

week; (ii) he alternated between five- and six-day workweeks during his specified period of employment; and (iii) on the weeks he worked six days, he was not paid overtime for the Meal Break Time that he worked, despite the fact that he had worked in excess of 40 hours.  From those allegations, the Court infers that Pernell Gordon worked approximately 65 minutes of overtime for which he was not compensated, approximately every other week.  *See Mota* v. *Abalon Exterminating Co., Inc.*, No. 22 Civ. 7602 (MKV), 2024 WL 4202687, at *5 (S.D.N.Y. Sept. 16, 2024) (explaining that the allegations in *Herrera*, "as a whole, … created a plausible inference in support of [plaintiffs'] FLSA overtime claims without the need to cite any one specific workweek including unpaid overtime").

Plaintiff Pernell Gordon's allegations are similar to those made in other cases in this Circuit that have survived a motion to dismiss.  For example, in *Brain* v. *Execu-Search Group*, a sister court in this District found that the plaintiff had adequately alleged an FLSA overtime claim where she alleged that she worked over forty hours "each week" and provided an estimate of her overtime hours.  No. 22 Civ. 8219 (MKV), 2024 WL 838085, at *3-4 (S.D.N.Y. Feb. 28, 2024); *see also Collison* v. *WANDRD, LLC*, 737 F. Supp. 3d 231, 239 (S.D.N.Y. 2024) (finding that plaintiff did not need to "identify the particular weeks in which he worked overtime hours where he allege[d] that he typically worked overtime hours and provide[d] the number of overtime hours worked").  Accordingly, the Court denies Defendants' motion to dismiss the first claim for relief.

### 3. The Court Will Retain Supplemental Jurisdiction over the Remaining NYLL Claims

Having denied Defendants' motion to dismiss Plaintiff Pernell Gordon's claim under the FLSA, the Court turns to the remaining claims, which arise under the NYLL.  The Court's ability to consider these claims hinges on the question of supplemental jurisdiction.  For the reasons discussed below, the Court finds that an exercise of supplemental jurisdiction over Plaintiffs' NYLL claims is appropriate at this stage of the litigation.

#### a. Supplemental Jurisdiction Under 28 U.S.C. § 1367

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); *see also Montefiore Med. Ctr.* v. *Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011).  To be related, "the federal claim and state claim must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Med. Ctr.*, 642 F.3d at 332 (quoting *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 725 (1966)).

Nevertheless, supplemental jurisdiction is not mandatory, and courts may, under certain circumstances, "decline to exercise supplemental jurisdiction over a claim."  28 U.S.C. § 1367(c).  These circumstances include instances where "the claim raises a novel or complex issue of State law," *id.*

21

§ 1367(c)(1); "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," *id.* § 1367(c)(2); "the district court has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3); or "exceptional circumstances" exist such that "there are other compelling reasons for declining jurisdiction," *id.* § 1367(c)(4). *Accord Reyes* v. *City of New York*, 141 F.4th 55, 63-64 (2d Cir. 2025). Should a court find that any of these categories is implicated, it must "balance the values of judicial economy, convenience, fairness, and comity" in determining whether to exercise jurisdiction. *Klein & Co. Futures, Inc.* v. *Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)). Ultimately, the decision as to whether to exercise supplemental jurisdiction is entirely within the court's "discretion[ ] and [is] not a litigant's right." *Id.* at 263.

### b. The Exercise of Supplemental Jurisdiction Is Appropriate in This Case

Defendants offer a cursory one-paragraph argument that this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims — the Second, Third, Fourth, Fifth, and Sixth Causes of Action — "[b]ecause dismissal of Plaintiffs' sole federal claim is appropriate." (Def. Br. 8). As discussed, the Court has found that dismissal of the federal claim is not appropriate. Accordingly, the Court cannot and does not decline to exercise supplemental jurisdiction on that basis.

22

Alternative to that argument, Defendants ask the Court to decline to exercise supplemental jurisdiction over Plaintiffs' Sixth Cause of Action. This claim asserts that Defendants knowingly or intentionally failed to pay Plaintiffs and the Putative New York Class on a timely basis as required by NYLL § 191(1)(a). (FAC ¶¶ 126-130). By way of background, NYLL § 191(1)(a) provides that "manual worker[s] shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." NYLL § 191(1)(a). Plaintiffs argue that, because they were not paid weekly, they and the Putative New York Class "are entitled to the amount of their untimely paid wages in liquidated damages, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-a)." (FAC ¶ 130).

In their motion to dismiss, Defendants assert that this Court's exercise of supplemental jurisdiction over this claim is inappropriate because (i) there is a split in New York state courts over whether violations of NYLL § 191(1)(a) are privately enforceable under NYLL § 198(1-a), such that "[d]eclining jurisdiction removes the risk of inconsistent results between state and federal courts"; (ii) Plaintiffs' pay frequency claim will substantially predominate over the sole FLSA claim; and (iii) declining jurisdiction would result in no prejudice to Plaintiffs, "who could pursue their pay frequency claims in State court." (Def. Br. 12-13 (internal quotation marks omitted)). The Court addresses each assertion in turn.

23

As a preliminary matter, this Court has previously recognized that "New York state courts [have been] divided on whether a private right of action exists to recover damages for an employer's failure to pay timely wages pursuant to NYLL § 191," and that "[t]he New York Court of Appeals has not yet addressed this split." *Chakma* v. *Sushi Katsuei, Inc.*, No. 23 Civ. 7804 (KPF), 2025 WL 429730, at *6 n.4 (S.D.N.Y. Feb. 7, 2025) (citing *Vega* v. *CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286, 288-89 (1st Dep't 2019) (finding a private right of action for a violation of NYLL § 191), and *Grant* v. *Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117, 122 (2d Dep't 2024) (finding no private right of action for a violation of NYLL § 191)); *see also Lange* v. *Empire Holdings and Invs., LLC*, No. 23 Civ. 8052 (MMG), 2025 WL 1906700, at *15 (S.D.N.Y. July 10, 2025) ("Here, state law is unsettled:  The First Department has held that the NYLL confers an express and implied private right for employees to sue employers for frequency violations, ... whereas the Second Department subsequently held that the NYLL did not provide an express private right of action for biweekly, rather than weekly payment in violation of NYLL § 191(1)(a), nor was there an implied private right of action." (internal citations omitted)).[5]

---

[5]    NYLL § 198(1-a) permits an employee who is "paid less than the wage to which [she is] entitled" to bring a claim "to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest ... and, unless the employer proves a good faith basis to believe that its *underpayment* of wages was in compliance with the law, an additional amount as liquidated damages."  NYLL § 198(1-a) (emphasis added).  The First and Second Department are divided over whether the private right of action provided for by that section applies to claims regarding frequency of payment brought under § 191, or if the word "underpayment" in § 198 encompasses only nonpayment and instances where employees are outright paid less than they are owed.  *See Garzon* v. *Bldg. Servs. Inc.*, No. 24 Civ. 5429 (JLR) (RFT), 2025 WL 1871171, at *9-10 (S.D.N.Y.

Ultimately, the Court agrees with Plaintiffs that, where there is a split among state courts, a federal court need not decline to exercise supplemental jurisdiction. (Pl. Opp. 2). Instead, in such instances, "this Court's task is to predict how the [Court of Appeals] would resolve the uncertainty or ambiguity from the conflicting appellate decisions." *Phoenix* v. *Cushman & Wakefield U.S., Inc.*, No. 24 Civ. 965 (PMH), 2025 WL 357793, at *4 (S.D.N.Y. Jan. 31, 2025). Accordingly, the Court will not decline to exercise jurisdiction on that basis.

The Court also finds that Plaintiffs' pay frequency claims will not "substantially predominate" over the FLSA claim. (Def. Br. 12 (quoting *Giordano* v. *City of New York*, 274 F.3d 740, 754 (2d Cir. 2001))). Defendants' predominance argument rests on the contention that the FLSA claim and Plaintiffs' pay frequency claims turn on different evidence. (*Id.*). But here, the "non-FLSA [P]laintiff[s'] NYLL claims 'involve the same issues of hours and

---

July 2, 2025), *report and recommendation adopted sub nom. Garzon* v. *Bldg. Servs. Inc.*, No. 24 Civ. 5429 (JLR), 2025 WL 2062741 (S.D.N.Y. July 23, 2025).

During the pendency of this action, on May 9, 2025, NYLL § 198(1-a) was amended (the "Amendment"), and the parties submitted supplemental briefing as a result. The Amendment "created an exception to the liquidated damages rule for violations of the timeliness of wage payments provision." *Garzon*, 2025 WL 1871171, at *10. The provision now explicitly references NYLL § 191 and provides that "liquidated damages" are not available where an employer paid wages to an employee "on a regular payday" at least semi-monthly. NYLL § 198(1-a). Instead, those violations are subject to damages of "no more than one hundred percent of the lost interest found to be due for the delayed payment of wages calculated using a daily interest rate for each day payment is late based on the annual rate of interest then in effect." *Id.* Further, where late payment occurs after the effective date of the Amendment, liquidated damages are available in the amount of 100% of the total wages found to be due in violation of NYLL § 191 if the employer has committed more than one violation. *Id.* Despite the Amendment, Defendants maintain that supplemental jurisdiction over the Sixth Cause of Action is inappropriate. (*See generally* Def. Supp. Br.).

payments for [P]laintiffs who were employed in the same jobs, doing the same work, during periods that overlap with ... the FLSA [P]laintiff[ ]." *Isayeva* v. *Diamond Braces*, No. 22 Civ. 4575 (KPF), 2024 WL 1053349, at *12-14 (S.D.N.Y. Mar. 11, 2024) (quoting *Fallon* v. *18 Greenwich Ave., LLC*, No. 19 Civ. 9579 (MKV), 2021 WL 1105066, at *8 (S.D.N.Y. Mar. 23, 2021)).

In their supplemental briefing, Defendants argue for the first time that supplemental jurisdiction is inappropriate because Plaintiffs' Sixth Cause of Action is not "'so related to' their FLSA claim, over which this Court has original jurisdiction, 'that they form part of the same case or controversy.'" (Def. Supp. Br. 2 (quoting 28 U.S.C. § 1367(a))). Defendants acknowledge that courts in the past *have* previously found that FLSA and NYLL § 191 claims are sufficiently related. (*Id.*). But they argue that this is no longer the case because establishing a claim under the Amendment requires proof of whether Plaintiffs were manual workers, whether they lost interest due to the delayed payments, and the amount of interest lost, whereas establishing a claim for other wage violations alleged here requires proof that Plaintiffs performed uncompensated work during their meal breaks. (*Id.*).

The Court recognizes that the evidence required to establish the pay frequency claim differs somewhat from Plaintiffs' other wage and hour claims. Nonetheless, for the same reason that the Court is not persuaded by Defendants' predominance argument, it maintains that "whether ... Plaintiffs were paid their wages on time, paid all the wages to which they were entitled, or even paid their wages at all rolls up to the same common nucleus of

26

operative fact that arises from Defendants' compensation policies and practices." *Isayeva*, 2024 WL 1053349, at *13 (citing *Shahriar* v. *Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)).

Finally, the Court finds that declining to exercise supplemental jurisdiction over the Sixth Cause of Action may prejudice Plaintiffs, as they would have to refile their claims in state court while this action is pending. Accordingly, the Court proceeds to consider Defendants' remaining arguments regarding Plaintiffs' NYLL §§ 191 and 195 claims.

### 4. The Court Declines to Dismiss or Stay Plaintiffs' Claims for Violations of NYLL § 191(1)(a)

Defendants next contend that Plaintiffs' Sixth Causes of Action should be dismissed or stayed. (Def. Br. 13-25). As discussed, Plaintiffs' Sixth Cause of Action asserts that Defendants failed to pay Plaintiffs and the Putative New York Class on a timely basis under NYLL § 191(1)(a) (FAC ¶¶ 126-130), which requires employers to pay "manual worker[s]" weekly and not more than seven days after the end of the week in which the wages were earned, NYLL § 191(1)(a). Specifically, both named Plaintiffs state that they were compensated on a bi-weekly basis "consistently" throughout their employment, despite "regularly" spending more than twenty-five percent of their shifts doing physical tasks. (*Id.* ¶¶ 78, 83). Both named Plaintiffs also include concrete examples of physical tasks they performed regularly, such as preparing and cooking meals, and transporting materials and transporting residents in wheelchairs. (*Id.*). Still, Defendants argue that even if this Court were to exercise supplemental jurisdiction over these pay frequency claims, they must

be dismissed because there is no express or implied private right of action to enforce violations of NYLL § 191(1)(a) through NYLL § 198.  (Def. Br. 13-24; *see also* Def. Supp. Br. 3-4).  The Court disagrees.

As articulated in this Court's discussion of supplemental jurisdiction, "New York appellate courts are split on whether [NYLL §] 191, in conjunction with [NYLL §] 198, confers a private right of action."  *Zachary* v. *BG Retail, LLC*, 716 F. Supp. 3d 339, 347 (S.D.N.Y. 2024).  In carrying out its task of "predict[ing] how the [Court of Appeals] would resolve the uncertainty … from the conflicting appellate decisions," *Phoenix*, 2025 WL 357793, at *4 — namely, *Vega* v. *CM & Associates Construction Management, LLC* and *Grant* v. *Global Aircraft Dispatch, Inc.* — this Court finds that the Court of Appeals would likely agree with *Vega* and hold that §§ 191 and 198 together confer a private right of action.  That is because this Court agrees with the critical findings in *Vega* that (i) "the term underpayment," used in § 198(1-a), "encompasses the instances where an employer violates the frequency requirements of section 191(1)(a)" and (ii) "recognition of a private right of action … promote[s] the legislative purpose of the statute."  *Vega*, 107 N.Y.S.3d at 287-89.  The same conclusion has been reached by other courts in this Circuit.  *See Charles* v. *U.S. of Aritzia Inc.*, No. 23 Civ. 9389 (MMG), 2024 WL 4167502, at *6 (S.D.N.Y. Sept. 12, 2024) ("The clear weight of authority among district courts in the Second Circuit is aligned with the conclusion in *Vega* that there is an implied private right of action to enforce Section 191."); *see also, e.g., Gamboa* v. *Regeneron Pharms., Inc.*, 719 F. Supp. 3d 349, 355 (S.D.N.Y. 2024) ("Since *Vega*, every

New York court in the Second Circuit has adopted its holding." (collecting cases)).

The May 2025 Amendment only buttresses the Court's conclusion. "As amended, NYLL § 198(a-1) now explicitly states that it provides a private cause of action for violations of Section 191(a), although 'liquidated damages shall not be applicable to violations ... where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly.'" *Garcia* v. *New Force Constr. Corp.*, No. 23 Civ. 2336 (JAM), 2025 WL 2015158, at *15 (E.D.N.Y. July 18, 2025) (quoting NYLL § 198(a-1)). Accordingly, the Court permits the NYLL § 191 claims to proceed.[6]

### 5.   Plaintiffs Have Adequately Alleged Standing Regarding Their Wage Statement Claims Brought Pursuant to NYLL § 195(3)

Finally, Plaintiffs' Fifth Cause of Action asserts that Defendants willfully failed to supply Plaintiffs and the Putative New York Class members with accurate wage statements, as required by NYLL § 195(3). (FAC ¶¶ 122-125). Specifically, Plaintiffs allege that the wage statements they were provided did not accurately reflect the hours that they worked, due to Defendants' policy of automatically deducting meal breaks. (*Id.* ¶ 89). They argue that this conduct "actually harmed" Plaintiffs and the Putative New York Class members because

---

[6]     The Court also denies Defendants' request to stay the NYLL § 191 claims. (*See* Def. Br. 25; Def. Reply 6-7). *See Bryant* v. *Buffalo Exch., Ltd.*, No. 23 Civ. 8286 (AS), 2024 WL 3675948, at *6 (S.D.N.Y. Aug. 6, 2024) ("[Defendant] argues that if this [c]ourt holds that there is a private right of action, it should stay this case pending a decision by the New York Court of Appeals in *Grant* ... . But any decision by the Court of Appeals is far off, and it's not even certain that there will be one ... . The Court will not delay litigation for a decision that may never come.").

they "would have learned of their underpayments sooner" if wage statements listing the actual number of hours worked had been provided. (*Id.* ¶¶ 91-92). Instead, Defendants were able to "further delay providing proper compensation" and "hide their wrongdoings from employees." (*Id.* ¶¶ 93-94). Defendants challenge these claims on the basis that Plaintiffs have not plausibly pleaded (i) an injury in fact or (ii) a causal connection between their wage statements and denial of overtime compensation and therefore do not have standing to bring these claims. (Def. Br. 8-11). The Court examines each of the challenged elements in turn.

"To demonstrate injury in fact, a plaintiff must show the invasion of a [i] legally protected interest that is [ii] concrete and [iii] particularized and [iv] actual or imminent, not conjectural or hypothetical." *Maddox* v. *Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Strubel* v. *Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016)). In *TransUnion LLC* v. *Ramirez*, the Supreme Court addressed the requirement that a "plaintiff's injury in fact be 'concrete' — that is, 'real, and not abstract.'" 594 U.S. 413, 424 (2021) (quoting *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 340 (2016)). It explained that tangible harms, including "monetary harms," are among those that "readily qualify as concrete injuries under Article III." *Id.* at 425. But the Supreme Court went on to delineate, for purposes of standing, between "(i) a plaintiff's statutory cause of action to sue a defendant over the defendant's [statutory] violation ..., and (ii) a plaintiff's suffering concrete harm because of the defendant's [statutory] violation." *Id.* at 426-27. Because "an injury in law

30

is not an injury in fact[,]" "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427.

As discussed, Plaintiffs allege that the wage statements were inaccurate in that they did not report the correct amount of time worked, which prevented Plaintiffs and putative class members from discovering underpayments earlier and enabled their employer to continue to delay payment of proper wages. That is sufficient to allege a concrete injury at this stage of the litigation. *See Kaur* v. *Natasha Accessories Ltd.*, No. 23 Civ. 6948 (JPO), 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) (finding that plaintiff had adequately pleaded an injury in fact where she alleged that her wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for unpaid wages and deprived her of income for longer than otherwise would have been the case); *see also Isayeva*, 2024 WL 1053349, at *16-17 (finding that plaintiffs adequately alleged an injury "arising out of … inaccurate reporting of the hours worked by [p]laintiffs, which reporting obfuscated the fact of [d]efendants' alleged time-shaving and hindered [p]laintiffs' ability, at the time they were paid, to discover their underpayment and advocate for themselves"); *Lipstein* v. *20X Hosp. LLC*, No. 22 Civ. 4812 (JLR) (JW), 2023 WL 6124048, at *10 (S.D.N.Y. Sept. 19, 2023) ("The delay in compensation that results when someone lacks the full information needed to advocate for appropriate wages deals an injury that is distinct from any underpayment itself.").

31

Plaintiffs' allegations are also sufficient to "show some causal connection between the lack of accurate notices and the downstream harm." *Guthrie* v. *Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024). The Second Circuit has explained that such causal connection may involve a plaintiff "show[ing] that he or she would have undertaken ... advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided," for example, because "inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion." *Id.* Accordingly, based on the same allegations that the *Guthrie* Court found to be sufficient to establish injury, this Court finds that Plaintiffs have sufficiently pleaded a causal connection and declines to dismiss Plaintiffs' wage statement claims under NYLL § 195(3). *See Roma* v. *David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (collecting cases).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The Clerk of Court is directed to terminate all Defendants from the case except for Riverdale SNF, LLC, which remains a Defendant in this case. The Clerk of Court is further directed to terminate the pending motion at docket entry 40. The remaining parties to this litigation are hereby ORDERED to meet and confer and submit a revised case management plan on or before **September 18, 2025**.

SO ORDERED.

Dated:    August 18, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

33