**Seyfarth**

**Seyfarth Shaw LLP**

620 Eighth Avenue

New York, New York  10018

**T** (212) 218-5500

**F** (212) 218-5526

hwexler@seyfarth.com

T (212) 218-3332

www.seyfarth.com

May 29, 2026

**VIA ECF**

Honorable Katherine Polk Failla
United States District Court Judge
Southern District of New York
40 Foley Square, Room 2103
New York, N.Y. 10007

**Re:**    ***Gordon, et al. v. Riverdale SNF, LLC d/b/a Schervier Rehabilitation
& Nursing Care Center***
**Civil Case No.: 24-cv-2612-KPF (S.D.N.Y.)**

Dear Judge Failla:

We represent Riverdale SNF d/b/a Schervier Rehabilitation and Nursing Care Center ("Defendant" or "Schervier") in the above-referenced matter. Pursuant to Rule 4(A) of the Court's Individual Rules, we respectfully request a pre-motion conference in connection with Defendant's anticipated motion for partial judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"). Defendant's motion, which is not on consent, will seek dismissal of Plaintiffs' claims for liquidated damages in connection with their New York Labor Law ("NYLL") § 191(1)(a) claim. (See ECF No. 55, Second Am. Compl. ¶ 119.)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard under Rule 12(b)(6) on a motion to dismiss is the same as on a motion brought under Rule 12(c). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).

**I.**    **Plaintiffs' Claim for Liquidated Damages on Their NYLL Pay Frequency Claim (Sixth Cause of Action) Should Be Dismissed as a Matter of Law**

Plaintiffs Pernell and LaToya Gordon ("Plaintiffs") commenced this action on April 5, 2024. (ECF No. 1.) In their Second Amended Complaint, filed on September 3, 2025 (ECF No. 55 ("SAC")), Plaintiffs allege, inter alia, that they are entitled to liquidated damages under NYLL



§§ 191(1)(a) and 198 because, during their employment with Schervier, they were paid on a biweekly, as opposed to weekly, basis. (SAC ¶¶ 4, 58, 115–119.)

It is undisputed that Plaintiffs were paid on a biweekly basis. (SAC ¶ 58; ECF No. 74-1, Declaration of Pernell Gordon ¶ 7 ("I was paid every other week"); ECF No. 74-2, Declaration of LaToya Gordon ¶ 8 (same); *see also* ECF No. 74-3, Declaration of Lottoi Campbell-Crespo ¶ 7 ("Throughout my employment, Schervier paid me every other week on Thursday.").)

As Defendant previously explained to the Court, the New York State Legislature amended Section 198(1-a) of the NYLL to clarify what damages are recoverable for violations of Section 191 of the NYLL (the "Amendment"). *See* N.Y. S.B. 3006-C (2025).[1] The Amendment took immediate effect and applies to all causes of action "pending or commenced" at the time of enactment on May 9, 2025. (*Id*. § 2.)[2] It provides, in relevant part:

> Notwithstanding the provisions of this subdivision, **liquidated damages shall not be applicable to violations of paragraph a of subdivision one of section one hundred ninety-one of this article where the employer paid the employee wages on a regular payday, no less than semi-monthly**. Such violations shall be subject to damages as follows:
>
> (i)    no more than one hundred percent of the lost interest found to be due to for the delayed payment of wages calculated using a daily interest rate for each day payment is late based on the annual rate of interest then in effect, as prescribed by the superintendent of financial services pursuant to section fourteen-a of the banking law for the employer's first violation.

NYLL § 198(1-a)(i).

---

[1] Defendant expects Plaintiffs' counsel to challenge the constitutionality of this amendment as they have unsuccessfully tried to do before other judges in this District Court. But the Court should reject such arguments as Judge Subramanian did in his recent, well-reasoned May 6, 2026 Opinion and Order in the action *Bryant, et al. v. Buffalo Exchange, Ltd*., Civ. Case No. 23-cv-8286 attached as Exhibit A, p. 2-6.

[2] Since the Amendment, a number of New York district courts have confirmed so. *See, e.g., Bryant, et al. v. Buffalo Exchange, Ltd*., 2026 WL 1240054 (S.D.N.Y. May 6, 2026) (granting defendant's motion for a judgment on the pleadings as to plaintiffs' claim for liquidated damages based on the amendment); *Euson v. TRC Engineers, LLC*, 2025 WL 2591847, at *9 (N.D.N.Y. Sept. 8, 2025) (applying the May 9, 2025 amendment to plaintiff's complaint); *Lopez v. J&L Sky Contractors Corp*., 2025 WL 1859690, at *17 n.4 (E.D.N.Y. July 7, 2025) ("Given the clear legislative language that the May 9, 2025 Amendment "shall apply to causes of action pending" at the time of its passage, and the fact that it only clarifies the extent of available relief, the Court finds that the amended NYLL § 198[1- a] applies in this case.") *Garcia v. New Force Constr. Corp*., 2025 WL 2015158, at *15 n.6 (E.D.N.Y. July 18, 2025) (accord); *Garzon v. Bldg. Servs. Inc*., No. 24 CIV. 5429 (JLR) (RFT), 2025 WL 1871171, at *16 (S.D.N.Y. July 2, 2025) (applying amended NYLL § 198(1-a) to pending case), *adopted*, 2025 WL 2062741 (S.D.N.Y. July 23, 2025).



In *Bryant v. Buffalo Exchange, Ltd*., No. 23-CV-8286 (AS), 2026 WL 1240054 (S.D.N.Y. May 6, 2026), the plaintiffs asserted pay frequency claims under NYLL § 191(1)(a) based on biweekly (rather than weekly) payments and sought liquidated damages under NYLL § 198(1-a). The defendant moved for partial judgment on the pleadings based on the Amendment, and the Court granted the motion.

*Bryant* applies squarely here. It is undisputed from the allegations in the Complaint, as well as Plaintiffs' sworn declarations, that Schervier paid Plaintiffs on a biweekly basis, which is, as relevant here, more frequent than semi-monthly. (SAC ¶ 58.) Accordingly, liquidated damages are unavailable as a matter of law, and Plaintiffs' claim for such relief should be dismissed. *Bryant*, 2026 WL 1240054.

We thank the Court for its time and attention to this matter and respectfully stand ready to address any questions or submit any additional briefing Your Honor may require.

Respectfully submitted,

SEYFARTH SHAW LLP

 */s/ Howard M. Wexler*

Howard M. Wexler, Esq.

cc: All Counsel of Record (via ECF)

326228823v.2

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Delaney Bryant et al., | |
| Plaintiffs, | 23-cv-8286 (AS) |
| -against- | |
| Buffalo Exchange, Ltd., | OPINION AND ORDER |
| Defendant. | |

ARUN SUBRAMANIAN, United States District Judge:

In this putative class-action under New York state labor law, the defendant employer moved for partial judgment on the pleadings based on an amendment to the law that bars liquidated damages in this case. The plaintiff employees opposed the motion, arguing that the amendment's retroactive effect rendered it unconstitutional under the state constitution. For the following reasons, the Court agrees with defendant that the amendment bars the award of liquidated damages in this case, and GRANTS its motion for partial judgment on the pleadings.

## BACKGROUND

The Court presumes familiarity of the factual background of the case from prior decisions. *See Bryant v. Buffalo Exch., Ltd.*, 2024 WL 3675948 (S.D.N.Y. Aug. 6, 2024); *Bryant v. Buffalo Exch., Ltd.*, 2025 WL 2613369 (S.D.N.Y. Aug. 28, 2025). To summarize, plaintiffs allege that they constitute "manual workers" under New York law, and that defendant, the clothing retailer Buffalo Exchange, violated the New York Labor Law by paying them every other week instead of weekly. N.Y. Lab. L. § 191(1)(a). Plaintiffs seek interest on the allegedly late wages plus liquidated damages equal to 100% of the wages they allege were late. Dkt. 49 at 1.

After the Court denied Buffalo Exchange's motion to dismiss, the New York Legislature amended the relevant provision of state law to bar liquidated damages as a remedy on a § 191(1)(a) claim where the employee was paid at least semi-monthly unless the employer has previously been found to have violated the section. N.Y. Bill No. A03006C, Part U, § 1 (2025). The law applied immediately, including to all causes of action "pending or commenced" at the time of enactment. *Id.* § 2.

Buffalo Exchange moved for partial judgment on the pleadings as to plaintiffs' claims for liquidated damages. Dkt. 80. Plaintiffs opposed the motion, arguing that the amendment is unconstitutional under the New York Constitution. Dkt. 85.

## LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (alteration in original).

## DISCUSSION

The parties agree that Buffalo Exchange has not been previously found to have violated the law, and that plaintiffs were paid at least semi-monthly. Thus, so long as it is constitutional, the amendment clearly applies and bars plaintiffs' claims for liquidated damages. The Court therefore turns to plaintiffs' constitutional challenges.

Plaintiffs raise two challenges under the New York Constitution: (1) the law was improperly enacted and (2) the law violates the State Constitution's Due Process Clause.

### I.    The law does not violate Article VII of the New York Constitution

The New York Constitution requires the Governor to submit a proposed budget to the Legislature annually. N.Y. Const. art. VII § 2. The budget proposal may also include "other recommendations and information as the governor may deem proper." *Id.* The Governor is directed to submit proposed appropriations bills that are "included in the budget" along with "proposed legislation, if any, recommended therein." *Id.* § 3. The Constitution requires that all provisions in an "appropriation bill submitted by the governor or in such supplemental appropriation bill . . . relate[] specifically to some particular appropriation in the bill." *Id.* § 6 (the "anti-rider" provision). Plaintiffs raise two challenges under Article VII: first, that the anti-rider provision barred the amendment, and second, that the amendment exceeded the Governor's powers under Sections 2 and 3. None of these provisions renders the law unconstitutional.

### A.  The Section 6 limitations do not apply to Article VII bills

Section 3 permits two different categories of bills to be proposed by the Governor: appropriations bills and other substantive legislation known as "Article VII bills." *See Concerned Home Care Providers, Inc. v. New York State Dep't of Health*, 969 N.Y.S.2d 743, 749–50 (Sup. Ct. 2013) (citing a New York official who noted that the Governor's appropriation plan "is always accompanied by substantive legislation, known as Article VII bills").

The parties agree that the amendment was passed under the Article VII process, as a bill recommended to the Legislature by the Governor alongside the budget and its associated appropriations measures. Plaintiffs implicitly concede that the amendment is not an "appropriations bill," making it a "Article VII bill," but argue that the anti-rider provision applies to it nonetheless because it was passed via the Article VII process. Dkt. 85 at 13–14. That argument fails.

2

The New York Court of Appeals has made clear that where the text of a constitutional provision is clear, courts should look no further. *See People v. Carroll*, 3 N.Y.2d 686, 689 (1958) ("The most compelling criterion in the interpretation of an instrument is, of course, the language itself. Particularly is this so in the case of a constitutional provision . . . When this language is clear and leads to no absurd conclusion there is no occasion, and indeed, it would be improper, to search beyond the instrument for an assumed intent."). And here, the text is clear—Section 6 applies to "appropriation bill[s]." Plaintiffs do not contend that the amendment is an appropriations bill. The restrictions in the provision therefore presumptively do not apply.

In attempting to advance their atextual reading of the provision, plaintiffs primarily rely on *Seidemann v. Pro. Staff Cong. Loc. 2334*, 432 F. Supp. 3d 367 (S.D.N.Y. 2020). That case concerned a challenge to a different New York statute under the same anti-rider provision in the Constitution. In passing, the court noted that because the law in question "was enacted as part of the 2019 appropriation bill," it "therefore must comport with Article VII, § 6." *Id.* at 390. The court went on to hold that the law in question cleared that "low" bar. *Id.* Plaintiffs argue that because the law in question was actually an Article VII bill, and not an appropriations bill, the *Seidemann* court was extending the anti-rider provision to Article VII bills.

The Court declines to read such a broad proposition from a passing mention in *Seidemann*. Although plaintiffs are correct that the law in question in that case does appear to be an Article VII bill, it appears that neither party raised to the *Seidemann* court the distinction between Article VII bills and appropriations bills.

To the extent that the *Seidemann* court was consciously expanding the purview of the anti-rider provision, the Court respectfully disagrees with the conclusion. The text of the constitutional provision is clear, and plaintiffs' appeal to cherrypicked legislative history and policy arguments to justify its atextual reading is unavailing. The Court thus concludes that the anti-rider provision of Article VII, Section 6, of the Constitution does not apply to the amendment.

### B. Sections 2 and 3 do not create substantive limits on Article VII bills

In the alternative, plaintiffs argue that Sections 2 and 3 themselves create limits on Article VII bills. Plaintiffs cast their argument as protective of the Legislature's deliberative process, which they say is short-circuited by the Article VII process. *See* Dkt. 85 at 18–20. As they see it, even though the Legislature does not have to pass a bill suggested by the Governor, "[g]iven the volume of material and compressed timeframe, it is simply unrealistic to expect the legislature to police Article VII's limitations on its own." *Id.* at 20.

The text of the Constitution would appear to leave the content of Article VII bills to the Governor's discretion. Section 2 says that the Governor may include "recommendations as to proposed legislation, if any, *which the governor may deem necessary* to provide moneys and revenues sufficient to meet [the] proposed expenditures." N.Y. Const. art. VII § 2 (emphasis added). And Section 3 simply says the Governor should submit the proposed legislation at the same time as the proposed budget and appropriations. *Id.* § 3.

3

In arguing that these provisions impose substantive limitations on Article VII bills, plaintiffs rely primarily on *Pataki v. New York State Assembly*, 4 N.Y.3d 75 (2004). In a series of fractured opinions where none commanded a majority, the New York Court of Appeals "acknowledge[d] . . . that a Governor should not put into [an appropriations] bill essentially nonfiscal or nonbudgetary legislation." *Id.* at 94 (plurality op.). Plaintiffs seek to apply that principle to Article VII bills. That argument falls flat.

The dispute in *Pataki* primarily arose from a separate limitation of Article VII, located in Section 4. That provision prohibits the Legislature from "alter[ing] an appropriation bill submitted by the governor except to strike out or reduce items therein" but permitting it to add additional appropriations "provided that such additions are stated separately and distinctly from the original items of the bill." N.Y. Const. art. VII § 4 (the "no-alteration rule"). In 1998, the Legislature passed several appropriations proposed by the Governor, but then passed subsequent legislation that limited or conditioned the appropriations. *Pataki*, 4 N.Y.3d at 85–86 (plurality op.). In 2001, the Legislature struck the Governor's proposals, and then subsequently passed appropriations for identical amounts for similar purposes, but with different restrictions. *Id.* at 86–87 (plurality op.).

Both the plurality and the concurrence held that the Legislature's actions in both 1998 and 2001 were unconstitutional for violating Section 4's no-alteration rule. *Id.* at 88–89 (plurality op.), 99–100 (Rosenblatt, J., concurring). In doing so, they acknowledged that there was a limit to what a Governor could put in an appropriations bill, as Section 4's limitations on the Legislature's power to amend makes appropriations bills "susceptible to abuse." *Id.* at 92–99 (plurality op.), 101 (Rosenblatt, J., concurring).

That holding is of little help to plaintiffs. The reason that the *Pataki* court held that there were substantive limits to *appropriations* bills was because Section 4 limited the Legislature's power to amend the governor's proposed appropriations. Section 4 has no such limit for Article VII bills, so the *Pataki* logic would not apply. In fact, if Section 4's limitation did extend to Article VII bills notwithstanding the text—which it must for *Pataki*'s reasoning to apply—it would actually *reduce* the Legislature's power, since it would eliminate the ability of the Legislature to amend an Article VII bill.

Since neither text nor precedent favors allowing a Court to enforce substantive limits on Article VII bills, plaintiffs' argument fails.

### C. Even if either provision required a relationship to the budget, the amendment would satisfy the test

Even assuming either Sections 2, 3, or 6, created a substantive limit on Article VII bills, the amendment would survive constitutional scrutiny. Plaintiffs argue that there must be "a rational relationship between the challenged provision and a general item of appropriation in the budget." Dkt. 85 at 21 (quoting *Seidemann*, 432 F. Supp. 3d at 390). They concede that the test imposes a "low bar" but argue that because the amendment applies only to private employers, it does not affect the budget. *Id.* (citation omitted).

4

While it is undisputed that the amendment would not affect state employees, that isn't the end of the inquiry. Just because a law lacks one possible impact on the budget (reducing salary expenses for public employees) does not mean that it lacks *any* impact on the budget. The amendment's reduction of expenditures for businesses could increase their taxable income, and thus the taxes they pay to the state. It could encourage more businesses to operate in New York, which would also affect state tax revenue. Or it could encourage businesses to hire additional workers, who would then pay income taxes and sales taxes that would contribute to the public fisc.

Although plaintiffs reject these arguments as attenuated and not contemplated by the Governor or Legislature, rational basis review is—as plaintiffs concede—a low bar, and a Court is permitted to "hypothesize" as to rationales for legislation even if there isn't evidence that they were contemplated in the first instance. *Myers v. Schneiderman*, 30 N.Y.3d 1, 15 (2017) (quoting *Affronti v. Crosson*, 95 N.Y.2d 713, 719 (2001)); *accord Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) ("[W]hether a conceivable reason for enacting a statute actually motivated or was considered by the legislature is entirely irrelevant for constitutional purposes, because legislatures are not required to articulate their reasons for enacting statutes and a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." (quotations omitted)). And those potential rationales, whether considered by the Governor or not, are sufficient to survive rational basis review. Plaintiffs' challenge would thus fail even if Article VII provided substantive limits on legislation that a Court could enforce.

## II.    The law does not violate the Due Process Clause of the New York Constitution

In the alternative, plaintiffs argue that the amendment's application to cases pending at the time of enactment violates the Constitution's Due Process Clause. *See* N.Y. Const. art. I § 6. Their argument rests heavily on *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332 (2020) (per curiam), which struck down the retroactive application of stiffer penalties for landlords who overcharge tenants under the Rent Stabilization Law in New York City. *Id.* at 348–50. In that case, the New York Court of Appeals held that a portion of the law that gave rise to massive damages for lease contracts that might have expired decades earlier constituted a due process violation. *Id.* at 382–83.

Plaintiffs cite two limitations on retroactive legislation from *Regina* in support of their argument: first, that it cannot impair vested rights, and second, that "the retroactive nature of the legislation is 'supported by a rational basis commensurate with the degree of retroactive effect.'" Dkt. 85 at 24–25 (quoting *Regina*, 25 N.Y.3d at 375). Neither suggests that the amendment is unconstitutional.

Plaintiffs first argue that they had a vested right to liquidated damages, and the amendment therefore deprived them of a property interest without due process of law. But a more recent case from the Court of Appeals pours cold water on that argument. In *Article 13 LLC v. Ponce De Leon Fed. Bank*, 2025 WL 3272351 (N.Y. Nov. 25, 2025), that court observed that "[a] right is not vested absent a contractual arrangement or some other source for the claimed right," and that a

claim of a vested right "requires more than the existence of a statutory right that the legislature is free to reexamine in the future" *Id.* at *5 (cleaned up). "In other words, a vested right is something more than a mere expectation based upon an anticipated continuance of the existing law." *Id.* (quotation omitted). Here, plaintiffs assert nothing more than a "mere expectation" based on the continuation of a statutory right. Under New York law, that is insufficient to constitute a vested right.

Moreover, the amendment does not eliminate any "right" that plaintiffs have at all. Plaintiffs may still proceed to seek interest on the wages they allege were unlawfully delayed. The amendment only precludes one potential remedy—a remedy which, as the Court notes below, is disputed to begin with. While the remaining remedy may leave plaintiffs with less compensation than they could receive with liquidated damages, it further cements that plaintiffs have not lost any vested right.

Plaintiffs next argue that there is no rational basis commensurate with the degree of retroactive effect. This also fails. In *Regina*, the Court of Appeals noted that the rational basis test looks to "the relationship between the length of the retroactivity period and its purpose." *Regina*, 35 N.Y.3d at 376. In that case, the court pointed to the fact that the law in question created significant liability for lease contracts that had expired decades earlier—potentially turning a case with damages of approximately $10,000 to one with more than $285,000. *Id.* at 379–82.

The degree of retroactivity in this case is nowhere near as significant as *Regina*. Unlike that case, where the law created liability for contracts that expired decades ago, the amendment here only affects potential claims (1) within the statute of limitations and (2) where the action is not yet final. Plaintiffs do not point to any case where a court applying New York law has invalidated a law on due process grounds with such a degree of retroactivity. That alone would be fatal to their due process claim.

Moreover, the degree of retroactivity is further limited by the fact that the interpretation of the law that would allow for liquidated damages in a case like this is neither longstanding nor settled. The First Department recognized this remedy in *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286, 288 (1st Dep't 2019). But just a few years later, the Second Department came to the opposite conclusion. *Grant v. Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117, 125 (2d Dep't 2024). Although this Court previously found the First Department's view more persuasive, 2024 WL 3675948, at *3–5, it acknowledged that plaintiffs' interpretation was a "poor fit for the provision's plain text," *id.* at *6. Plaintiffs, therefore, had at most a tenuous claim for liquidated damages even before the amendment. So, any retroactive effect is muted, given that the Second Circuit or New York Court of Appeals may well have declared that plaintiffs lacked any claim for liquidated damages to begin with before any judgment was final.

As both of plaintiffs' constitutional challenges to the amendment fail, the Court holds that defendants are entitled to partial judgment on the pleadings with respect to the claim for liquidated damages.

## CONCLUSION

Buffalo Exchange's motion for partial judgment on the pleadings is GRANTED. Plaintiffs may not seek liquidated damages. Within 14 days of this order, the parties are directed to submit a joint letter stating whether (1) plaintiffs will proceed on a claim for interest only, or (2) whether the parties jointly agree to dismiss the interest-only claim without prejudice, which would allow the Court to enter judgment and for plaintiffs to appeal.

The Clerk of Court is respectfully directed to terminate Dkt. 80.

SO ORDERED.

Dated: May 6, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge