# Outten&Golden

June 3, 2026

**Via ECF**
Honorable Katherine Polk Failla
United States District Court Judge
Southern District of New York
40 Foley Square, Room 2103
New York, N.Y. 10007

Re: **_Gordon, et al. v. Riverdale SNF, LLC d/b/a Schervier Rehabilitation_**
**_& Nursing Care Center_**
**Civil Case No.: 24-cv-2612-KPF (S.D.N.Y.)**

Dear Judge Failla:

We represent Plaintiffs Pernell and LaToya Gordon in the above-referenced matter. We write in response to Defendant's May 29, 2026 letter requesting a pre-motion conference in connection with Defendant's anticipated motion for partial judgment on the pleadings under Rule 12(c). Dkt. 98. Plaintiffs request that the Court deny Defendant's anticipated motion.

New York Labor Law (NYLL) § 191 requires that manual laborers be paid on a weekly basis—a requirement that Defendant ignored. To protect the class of lower-income manual workers who are "dependent upon their wages for sustenance," NYLL § 198 provided those workers with a liquidated-damages remedy when their employer violated this frequency-of-pay provision. *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (1st Dep't 2019). Unhappy with having to pay meaningful damages for depriving their employees of the regular wage the law requires, employers lobbied the New York Legislature to remove the liquidated-damages remedy. The bills introduced in the Legislature failed to pass. Employers then turned to the Governor, who included a provision stripping the liquidated-damages remedy from § 198 (including for pending cases) as part of her 2026 budget. The Legislature tried to remove this provision from the budget. But the Governor re-inserted it, and the Amendment was ultimately included in the budget package.

Plaintiffs do not dispute that the Amendment, on its face, applies here. But the Amendment is unconstitutional for two reasons. First, it is invalid under Article VII of the New York Constitution because it was included in a bill introduced by the Governor as part of the budget process even though it has nothing to do with the state's budget. Second, it violates the Due Process Clause of the New York Constitution by retroactively depriving employees of a liquidated damages remedy to which they were entitled when they filed suit.

| **New York** | **Oakland** | **Washington, DC** |
|---|---|---|
| 685 Third Avenue, 25th Floor | 1999 Harrison Street, Suite 1500 | 1225 New York Avenue NW, Suite 1200B |
| New York, NY 10017 | Oakland, CA 94612 | Washington, DC 20005 |
| (212) 245-1000 | (415) 638-8800 | (202) 914-5097 |

Outten & Golden LLP
outtengolden.com

While *Bryant v. Buffalo Exchange* rejected these arguments, Plaintiffs respectfully disagree with that decision.

## I.    The Amendment to NYLL § 198 Violates Article VII of the New York Constitution

The executive budgeting provisions in Article VII authorize the Governor to introduce budget-related legislation, a narrow exception to the Legislature's exclusive legislative authority. Article VII authorizes the Governor to submit two types of budget-related bills: appropriation bills that appropriate money and bills known as "Article VII bills" that otherwise implement the budget. Three different aspects of Article VII make clear that all budget legislation, including Article VII bills, must have *some* relationship to the budget.

First, and most importantly, section 2 of Article VII limits the Governor's authority to introduce legislation through the budget process to bills "which the governor may deem necessary *to provide moneys and revenues sufficient to meet such proposed expenditures*." N.Y. Const. art. VII, § 2 (emphasis added). Section 3 then authorizes the Governor to submit only that "proposed legislation"—*i.e.*, the legislation described in section 2—alongside the proposed appropriations bills. *Id.* § 3. This is an explicit textual limitation on the Governor's legislative powers: Article VII legislation must relate to state revenues and expenditures, rather than whatever policy measures the Governor would like to enact. The history of Article VII confirms this reading: The 1927 amendments that created executive budgeting authorized the Governor to introduce *only* appropriation bills, N.Y. Const. Art. IV-A, § 3 (1937), and the 1938 amendments that authorized Article VII bills focused only on revenue bills. Journal of the Constitutional Convention of the State of New York (1938) (hereafter, "1938 Journal"), Appx. 3, Doc. 3 at 3; *id.* Appx 3, Doc. 16 at 83. As Chief Justice Kaye put it in her dissent in *Pataki v. N.Y. State Assembly*, 824 N.E.2d 898, 922 (N.Y. 2004)—in a point the majority did not dispute—Article VII bills by their "very nature" "must . . . relate to some item in an appropriation bill."

*Bryant* disputes none of this, but reads the phrase "the governor may deem" in section 2 to confer unfettered discretion on the Governor to classify anything she wants as budget-related. Ex. A at 3. But other courts have refused to read the word "deem" to confer unreviewable discretion. *E.g.*, *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1224 (D.C. Cir. 1993). And the New York Court of Appeals has emphasized the important role that courts play in resolving separation-of-powers disputes in the budgeting process. *Saxton v. Carey*, 378 N.E.2d 95, 98-99 (N.Y. 1978). *Bryant* does not explain why the Court of Appeals would read the word "deem" to strip courts of *any* authority ensure that the Governor complies with sections 2 and 3.

Second, the anti-rider provision of Article VII, section 6—which prohibits provisions in an "appropriation bill" that do not "relat[e] specifically to some particular appropriation in the bill"—is best read, given its history, to encompass all budget-related legislation, including Article VII bills. Section 6 originated as Article III, Section 22, adopted in 1894 to prevent the Legislature from "tacking on" to appropriation bills "provisions which otherwise could not be enacted." 2 Revised Record of the Constitutional Convention of the State of New York at 599 (1894). When that provision was moved into Article VII in 1938, the drafting committee stated that the purpose was to extend its "operation to include not only the Governor's budget bills but any supplemental appropriation bills," using "budget bills" to refer to both appropriation bills and Article VII bills. 1938 Journal, Appx. 3, Doc. 3 at 4-5.

Both this Court and the Second Circuit have explicitly applied section 6 to an Article VII bill, holding that, under section 6, an Article VII bill's content must "relate[] specifically to some particular appropriation." *Seidemann v. Prof. Staff Cong. Loc. 2334*, 432 F. Supp. 3d

367, 390 (S.D.N.Y. 2020); *Seidemann v. Prof Staff Cong. Loc. 2334, Am. Fed'n of Tchrs. AFL-CIO*, 842 F. App'x 655, 659 (2d Cir. 2021). *Seidemann*'s Article VII bill met that test, though the Second Circuit described plaintiffs' section 6 argument as "the strongest" argument on appeal. 842 F. App'x at 659. *Bryant* acknowledged that *Seidemann* applied section 6 to an Article VII bill, but refused to follow the decisions from this Court and the Second Circuit on the theory that neither court appreciated the distinction between appropriation bills and Article VII bills. Alternately, *Bryant* "respectfully disagree[d]" with this Court and the Second Circuit's decisions. Ex. A at 3.

Third, alongside the explicit textual limitations in sections 2, 3, and 6, the Court of Appeals has recognized implicit limits on the Governor's ability to include "essentially nonfiscal or nonbudgetary legislation" in appropriation bills. *Pataki*, 824 N.E.2d at 909 (plurality op.). The concerns that animated those limits apply with equal force to Article VII bills: Allowing the Governor to include non-budget-related provisions in either type of budget legislation would invert the roles the Constitution assigns to the Governor and Legislature and allow the Governor to exploit the compressed budget timeline to force through legislation the Legislature would otherwise refuse to enact. That is what happened here. After at least seven bills to amend Section 198 died in committee over multiple legislative sessions, the Governor embedded the equivalent provision in a 4,000-page budget package. Both chambers tried to cut the Amendment from the budget but the Governor re-inserted it in the final version enacted well after the budget deadline, when the budget's delay had suspended legislators' pay. That sequence underscores why judicial enforcement of Article VII's limitations is essential.

The Amendment bears no conceivable relation to the budget because it governs only the relationship between private employers and employees. *Bryant* disagreed, reasoning that the Amendment might have some attenuated impact on taxes. Ex. A at 4-5. But the Court of Appeals has warned against an overly expansive understanding of what counts as budget-related. *Rudder v. Pataki*, 711 N.E.2d 978, 982 (N.Y. 1999). *Bryant*'s reasoning is so capacious that any policy matter could be characterized as budget-related. That would be no different than prohibiting judicial review altogether.

## II.    Applying the Amendment Retroactively Violates Due Process

Even if the Amendment were constitutionally enacted, applying it retroactively to Plaintiffs' pending claims violates the Due Process Clause of the New York Constitution. N.Y. Const. art. I, § 6. When Plaintiffs filed this action, *Vega* established a clear right to liquidated damages for frequency-of-pay violations. New York courts have long held that retroactive legislation "cannot be applied to require dismissal of an action that was viable at the time it was filed" because "[s]uch a result would impair vested rights." *Ruffolo v. Garbarini & Scher, P.C.*, 239 A.D.2d 8, 12 (1st Dep't 1998). Plaintiffs' liquidated damages claim was viable at the time it was filed, and the Amendment may not be applied to eliminate it.  Other state courts of last resort have held that retroactively imposing damages caps and other significant substantive limitations on damages violates due process and analogous state constitutional doctrines. *E.g.*, *Estate of Bell v. Shelby Cnty. Health Care*, 318 S.W.3d 823, 832 (Tenn. 2010); *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 759-60 (Mo. 2010); *Miles v. Weingrad*, 164 So.3d 1208, 1212 (Fla. 2015); *Blair v. McDonagh*, 894 N.E.2d 377, 391 (Ohio App. 2008); *Martin by Scoptur v. Richards*, 531 N.W.2d 70, 88 (Wisc. 1995). There are strong reasons to think the Court of Appeals would reach the same conclusion here.

Relatedly, retroactive application fails the test established in *Matter of Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*, 154 N.E.3d 972, 995 (N.Y. 2020), which requires that the retroactive nature of legislation be "supported by a rational basis

commensurate with the degree of retroactive effect." The Amendment eliminates the primary and most significant remedy available to Plaintiffs for unlawful conduct. Just as *Regina Metro.* held that the Legislature could not retroactively impose treble damages on defendants, the Legislature cannot retroactively strip Plaintiffs of a damages remedy in pending litigation. Other courts of last resort have consistently so held. *See, e.g., Prince George's Cnty. v. Longtin*, 19 A.3d 859, 881 (Md. 2010); *Estate of Bell*, 318 S.W.3d at 832; *Klotz*, 311 S.W.3d at 759-60. *Bryant*'s contrary analysis does not adequately grapple with these authorities.

We thank the Court for its attention to this matter.

Respectfully submitted,

Outten and Golden LLP

Molly Brooks