**Seyfarth**

**Seyfarth Shaw LLP**

620 Eighth Avenue

New York, New York  10018

**T** (212) 218-5500

**F** (212) 218-5526

hwexler@seyfarth.com

T (212) 218-3332

www.seyfarth.com

June 9, 2026

**VIA ECF**

Honorable Katherine Polk Failla
United States District Court Judge
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

> **Re:** ***Gordon, et al. v. Riverdale SNF, LLC d/b/a Schervier Rehabilitation & Nursing Care Center***, **Civil Case No.: 24-cv-2612-KPF (S.D.N.Y.)**

Dear Judge Failla:

We represent Riverdale SNF d/b/a Schervier Rehabilitation and Nursing Care Center ("Defendant" or "Schervier") in the above-referenced matter. Schervier submits this letter to request that Plaintiff Latoya Gordon's Declaration in support of Plaintiff's Motion for Court-Authorized Notice pursuant to 29 U.S.C. § 216(b) (the "Motion") (ECF Dkt. 74-2) be stricken, or, at a minimum, disregarded in its entirety in evaluating the Motion.

As with her husband, Plaintiff Pernell Gordon, Plaintiff Latoya Gordon's sworn deposition testimony reveals material inconsistencies with both the declaration she submitted in support of the Motion and the allegations in the Second Amended Complaint. This newly developed evidence squarely undermines the factual predicates of Plaintiff Pernell's Motion and warrants the relief requested here.

It is well settled that a party may not support a motion through a declaration that contradicts her own sworn testimony. The Second Circuit has repeatedly held that courts may—and should—disregard or strike affidavits that conflict with prior deposition testimony absent any plausible explanation. *See, e.g., Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011); *Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) (rejecting a "self-serving" affidavit that contradicts prior sworn testimony without explanation).

That is precisely what has occurred here. Plaintiff Latoya Gordon submitted a self-serving declaration attempting to establish that her husband is similarly situated to other hourly employees and that court-authorized notice should issue. Her subsequent deposition testimony, however, squarely contradicts those assertions. As summarized below, Plaintiff Latoya Gordon's testimony



confirms that she lacks personal knowledge of any common, unlawful policy or practice that would justify notice.

| Plaintiff's Statement in Motion for Conditional Certification | Plaintiff's Deposition Testimony |
| --- | --- |
| "I also discussed with other Schervier hourly staff – including kitchen staff and health aides – that they had to work through their unpaid meal breaks because they had to prepare food and assist residents when needs arose. For example, I remember an instance in which an aide was taking a meal break but a resident needed a shower at that time, so Schervier required the aide to give up her meal break to attend to the resident." (ECF No. 74-2 ¶ 9.) | Q.    So you testified that you had conversations with recreation aides about missing meal breaks. Did you have conversations with anyone else outside of the recreation department about missing meal breaks?<br><br>A.    Other than by husband?<br><br>Q.    Besides your husband.<br><br>A.    No.<br><br>(Dep. Tr. at 98:25-99:9.) |
| "I observed all other activity specialists working during their meal breaks as well." (ECF No. 74-1 ¶ 9.) | Plaintiff Latoya clarified that she would only see other recreational aides (i.e., activity specialists) allegedly working if she walked to the doorway of her office and peered into the other offices. (Dep. Tr. at 84:15-84:17.)<br><br>She did not recall how often this occurred. (*Id*. at 85:4-85:13.)<br><br>She also testified that some recreational aides were able to leave the building to take meal breaks, but she could not recall who they were. (*Id*. at 88:9-89:11.)<br><br>She does not know if other recreational aides were paid for any alleged time spent working through their meal breaks. (*Id*. at 75:9-75:19.) |

Plaintiff Latoya's remaining averments in her declaration to this Court, such as that "4 out of 5 meal breaks a week were interrupted by work, and because of these interruptions I only took a break during one workday a week," are unworthy of credence. (ECF No. 74-2 ¶ 9.) In a prior declaration, and at her deposition, she provided materially different accounts:

- In a prior declaration, she averred that she "worked about 45 minutes off the clock each week during unpaid meal breaks (about 15 minutes per day, 2 days per week)." (Dep.

 **Seyfarth**

Ex. 6 ¶ 10.)  She made a similar statement in the operative complaint.  (ECF No. 55 ¶ 71.)

- At her deposition, she testified that during her lunch break, which lasted from 12:00 p.m. to 1:15 p.m., she inputted patient information into her computer. (Dep. Tr. at 66:12-66:18.)

- She initially testified that inputting patient notes could take more than five minutes per resident, but when confronted with the notes—which consisted of, at most, a few sentences per resident—she testified that she did not know whether it took more than 30 seconds per resident.  (Dep. Tr. at 48:1-49:14, 99:11-101:20; Dep. Ex. 5.)

After being shown her prior declaration, the operative complaint, and her patient notes, Plaintiff Latoya was asked whether she was now claiming that she worked only 45 minutes *per week* during her meal breaks (which, given her 1.25-hour daily lunch period, would have left well over 30 minutes for an uninterrupted break). At that point, she professed an inability to recall how long she actually worked during her lunch breaks:

> Q.    Well, I'm asking you if this specific statement is true, that Latoya Gordon estimates that she worked an average of approximately 45 minutes of weekly meal break time?
>
> A.    Yes. . . .
>
> Q.    Does this mean that for the average workweek, right, so the entire week, that you only worked in total 45 minutes during your lunch breaks?
>
> A.    I don't remember.  I don't remember exactly.  No, I don't remember exactly.

(Dep. Ex. at 106:25-107:14; *accord id*. at 104:13-104:18.)

Accordingly, because Plaintiff Latoya's deposition testimony contradicts the declaration she submitted to this Court, the latter should be struck or disregarded.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

SEYFARTH SHAW LLP

/s/ Howard M. Wexler

Howard M. Wexler, Esq.

cc: All Counsel of Record (via ECF)